Ron, this case is on the dot. 2-14-0059. Marvin Corsi and Clare Corsi are plaintiffs. I want the Elaine Melbourne et al. defendants to leave. Are you in for the Avalon? Attorney Matthew Dudley? Are you in for the Avalon? Attorney Guy M. Conti? I'm in for Mr. Dudley. Thank you. Good afternoon, Ron. May it please the Court. We are here today seeking a reversal of the Circuit Court's dismissal of Counts 6 and 7 of our amended complaint. Plaintiff's theory arises under Section 876 of the Restatement of Torts 2nd. The in concert liability idea that was first embraced and articulated in Illinois law by this very court in the case Sankey v. Bahena. In concert liability allows for a non-driver of a motor vehicle or a boat or a plane or any similar setting to be held responsible if they are acting in concert with another tort feature in that they are participating jointly in a tortious activity. Just to separate this, break this down a little bit, I take it it wouldn't be your position that if you're providing alcohol or drugs to some driver, either of a watercraft or motor vehicle, that in and of itself wouldn't be enough, would it? It would depend on the extent of the alcohol provided, whether or not the person providing the alcohol was actively consuming the alcohol with the person driving the vehicle. In this instance, what we have is we have the Appley-Melbourne. They purchased the cocaine and alcohol together prior to traveling to the Chain of Lakes. They got on the boat together. They consumed the alcohol and cocaine together. They, and it's alleged in the complaint, that they consumed alcohol and cocaine to the point where Mr. Hatina, the other defendant, was impaired and not just a conclusive impairment, but had bloodshot eyes, slurred speech. Let's assume that was all true and that she provided everything. I take it that's not your total allegation, sir. And to me, one of the things this case is going to turn on is the allegation of exhorting or encouraging the excessive speeding and the behavior. Do you have any cases that say that if you provide drugs and alcohol, that in and of itself would be enough? Well, the Price case, which was cited by the Second District case, the Second District Court in Bikina, the Price case is the Civil Court of Appeals in West Virginia. And in that instance, the passengers in the motor vehicle were either passing a marijuana pipe or a marijuana cigarette around. Everybody was actively smoking marijuana. They smoked marijuana to the point that they were impaired. The driver crossed the center line and, as is often the case in these tragic situations, killed two family members and rendered another family member permanently disabled. And the West Virginia court said that was enough. Just the active participation of doing the illegal act. Excessive intoxication? Correct. You don't have a case that says that. We do not. We have Bikina citing with approval, though, to Price as an example of an application of $8.76 million. But you alleged more than merely getting him intoxicated, correct? We absolutely did. We also alleged that while they were in a 29-foot cigarette boat, that they were traveling together in excessive speed. We allege that the defendant, Melbourne, verbally encouraged the defendant, Hatina, to operate the 29-foot cigarette boat in an area called Petit Lake, part of the chain, which is the smallest lake on the chain, at a speed in excess of 40 miles an hour. In an area that was crowded with swimmers and people tubing, including the Borsche family. So you're, again, you talked about Sankey and Sankey v. Patina. The court in Sankey, we recognize the tort in concert liability. But we also discussed that in those cases where liability is recognized, the individual in question is a direct participant in the wrongful conduct that harms another. And Sankey and Clausen both involve competitions, essentially drag racing, where the passenger who's held liable is encouraging the driver to specifically violate the law. Go through the stop sign, etc. Go over the speed limit. Go faster than 25 miles an hour. Here, there's no speed limit, correct? Correct. We don't know from the complaint where Ms. Melbourne was seated. She may have been in the back of the boat. Or she may have been, according to the complaint, I haven't... The complaint... Does the complaint say where she's located at the time she's making these encouraging words? It does not. And boats are, would you agree, boats are different than vehicles? Yes. So there's some comparisons, but on a boat, under Illinois law and maritime law, the operator of the boat is always responsible for any injuries that are due to negligent operation. Would you agree with that? Yes. But here you're saying she did more than just supply the alcohol and drugs. She specifically encouraged him to go faster in a dangerous area, which is direct participation as opposed to some passive participation by an ordinary passenger on the boat. That's exactly right. In addition to... And when she was encouraging him, it was while he was impaired in a state of intoxication. And she knew that there were other people in the water, including the victim. That's correct. Did she have to know that the young man was directly in the course of this boat? I don't believe that she has to have direct knowledge that there is an impending tragedy about to occur. I think that 876 simply says if you are encouraging someone to drive their 29-foot cigarette boat while they're impaired with alcohol and cocaine and at an excessive rate of speed, given the body of water and the circumstances they were in, that would give liability, at least from a 2-6-15 standpoint, stating a claim. You can go back and take discovery and determine exactly what her role was. That's exactly right. That's exactly right. Of course, the other problem with a cigarette boat is do they really go less than 40 miles an hour? Well, it's an additional question if that's even an appropriate... And I think in this instance, we've alleged the size of the boat. If you look, and that's one thing, in Judge Murphy's order, he focused that the only facts that we alleged were the consumption of alcohol and drugs with the defendant, Hattina. And respectfully, that's just not... When you read the complaint in total, there is much more that is alleged. In Simmons... Yes. ...the Supreme Court found that there had been... The cause of action stated, because in Simmons, on stage, provided Homatas with only one option, to leave the premises while driving drunk. Here, Hattina had an option. He could have slowed down. I mean, Ms. Melbourne didn't cause him to operate the boat under the influence of alcohol. Well, that gets to the nature of 876. 876 doesn't say that Melbourne has to control the actions of Hattina. 876 says she has to control her own actions. And if her own actions provide, as the restatement comments talk about, moral support or encouragement to the tort fees, that is what places her in equal standing. Well, you know, moral support and encouragement, I think, are two different, really, two different things. Moral support, you know, encouragement, I say, you go, you go, you go. What is moral support? Well, I'm quoting from the restatement that it provides something analogous to moral support. Substantial encouragement or assistance. Correct. Substantial encouragement or substantial assistance. Correct. And your argument is that you have pled substantial encouragement here because she is telling him, go faster, go faster, in a dangerous situation. That's exactly right. And we pled that she verbally encouraged him to operate the cigarette boat at speeds in excess of 40 miles an hour while he was impaired. What about their argument that that language encouragement is just conclusory and that's not a fact pleading? Well, respectful. That is the language that was in Sankey. That is very similar to the language that was in Simmons. I mean, we are, the facts, the pleading should be liberally construed. I just respectfully think that is requiring too much, that we would have to actually plead the exact words that were stated to Hattina is requiring too much at this stage. And how would they have known that at this stage without discovery? That's exactly right. And they were the only two individuals on the boat. There were no other passengers. That's correct. Have you ridden on a cigarette boat? I have. And ordinarily, only the operator who's up at the front of the boat sees the view directly in front, especially at excessive speeds, because the boat is, the front of the boat is raised. That's exactly. It is not a boat that's appropriate to be traveling, to be operating in an area where there's a lot of folks. Because exactly as the Justice pointed out, you have, your vision is obscured. What day of the week, I forget, was this? This was a Saturday. Okay. In the afternoon. And there's no, although I know there's been a lot of argument about it within the chain management, cigarette boats are definitely allowed on the chain. They are. And that's, I understand the concern about Pandora's box. But we can analyze and courts can analyze with proper guidance from the appellate courts and court fact-specific circumstances, which, where we can apply Section 876. And as your honors have pointed out, this is not a situation where we're limiting it to simply the provision or the joint consumption of intoxicating beverages and illegal drugs. But it is those two factors in combination with the size of the boat that's pled, where the boat was being operated, the speeds that the boat was being operated, and that the appellee was verbally encouraging the defendant to operate the boat in this manner. And under those circumstances, we believe, we've stated a claim, that we should be allowed to go forward to determine what, if any, additional facts are present. The part of your argument that says that he was impaired at driving this boat at all, frankly, when he's impaired, but driving it at excess speeds, were there independent observers to these conditions of impairment? There were, after the little boy was struck and killed. Were they other than the family members, or were there independent observers around, too? The law enforcement then took custody of the situation. They did field sobriety, of which Mr. Melbourne failed all of them. There was inventory. Mr. Hattia. And your argument is that, based upon the allegations and the complaints, she obviously knew of the impairment. Despite that, she's encouraging him to drive faster and faster in a dangerous waterway. That's exactly right. I don't know why either party cited this, but in the vehicle for the Boating Act, the operator of a watercraft is liable for injury or damage associated by negligent operation of such watercraft. And your argument is that does not trump common law. That's exactly right. That's exactly right. There could be a different criminal analysis, perhaps, but that would be something that's different from the civil analysis. Maybe not enough for aiding and abetting, but certainly for civil responsibility. That's exactly our position. If she is also impaired by the alcohol and drugs, does that in any way impact this, if she doesn't know what she's saying? I think it just further supports a circumstance where Section 876 liability should apply. I don't think that she is less culpable if she is so intoxicated or impaired. I think that would just not make good sense in terms of public policy for the state of Illinois, that your defense could be, well, I was so drunk or so high that I really didn't understand what I was doing. You'll have an opportunity for reply if you choose. Thank you. Mr. Conte. May it please the court. John Conte, on behalf of defendant athlete Renee Melbourne. If I could, I'd like to start off with a few of the points your Honor's raised initially. First, if we're speaking strictly of in-concert liability. Speak a little better into the microphone since this is being recorded. We want to make sure we hear everything you say. First, if we're speaking about in-concert liability, that term strictly defined in 876. I think we're talking about 876A at that point. If the plaintiff's argument is based solely on 876A, there's no allegation regarding an agreement between Ms. Melbourne and Mr. Katina. And there's no allegation that Ms. Melbourne's conduct constitutes an independent tort. And I think that takes it out of the realm of 876A and it takes it out of the realm of 876C. So that leaves them solely with 876B, which counsel later discussed in terms of substantial assistance or encouragement. With respect to your Honor's point, is there any Illinois case that allows liability solely for provision of alcohol and drugs? The answer clearly is no. The Supreme Court and Charles make very clear there is no common law liability simply for providing drugs. Or excuse me, simply for providing alcohol. And the rationale set forth in Charles is that the consumption of the drug, the consumption of the alcohol, is the proximate cause of the injury, not the providing of it. Under that rationale articulated in Charles, the same rationale would have to apply to drugs. There simply is no analytical difference between the two for purposes of this analysis. Well, drugs are illegal, though, to begin with. They are, Your Honor. At least today, they're illegal. Yes. But the Charles analysis is predicated on the proximate cause of the injury, not the substance being provided. I think counsel's argument, and I think the briefs make it clear, they're arguing under subsection B that your client provided substantial assistance or encouragement by verbally encouraging the driver to go at a speed that was dangerous in this waterway, knowing that there were people on the lake that may be struck by the boat, similar to Sankey, somebody who's encouraging a person to drag race. And boats and motor vehicles are different, but a cigarette boat on a crowded lake is dangerous when it's going 10 miles an hour. Your Honor, I would agree that's a part of what they are trying to allege. I think what Judge Murphy did and what we urge this Court to affirm is their allegations are sort of broken into two parts. The first part of them is simply providing the information. I would agree they allege specific facts about she provided alcohol, she provided drugs. There's no dispute there. My point is this Court can't consider those allegations because of the analysis in Charles and the extension of that rationale into drugs. Well, in Homotas, the Court did say, and they distinguished Charles, and the Court talked about the fact that you know someone is drunk, you know that person is a danger, and you put that person behind the wheel. Here, Ms. Melmer may not have known at the time that they got onto the boat that the driver's going to be a danger to the public, but as she's plying him with alcohol, plying him with drugs, and then while he's operating the boat, knowing that, she encourages him to go faster, go faster. Your Honor, I think the difference between Simmons, this case, as well as Sankey or Bushina, once those allegations of providing alcohol or drugs are stripped, what is left are conclusions. They don't actually say she tells him to go faster. She verbally encouraged him. I don't know what that means. Does that mean she told him to go slower or, excuse me, to go faster? Does that mean she did not tell him to slow down? Does that mean she encouraged him to engage in a competition such as Sankey or Clawson? Well, at this stage, we should construe those allegations liberally in favor of the plaintiff, correct? I would agree generally the allegations in a complaint should be construed in favor of the plaintiff. However, it's also incumbent on the plaintiff to do a pre-suit investigation. If they don't know facts, hard facts, that actually would allege a cause of action against Ms. Melbourne, then they don't have a claim against Ms. Melbourne. And Your Honors had both commented at this stage of the case. Well, at this stage of the case, Mr. Hattina is a defendant. They will have the opportunity to obtain discovery from Mr. Hattina. They'll have the opportunity to get Mr. Hattina's debt. If Mr. Hattina says something in his deposition or discloses something in his answers to discovery that suggests Ms. Melbourne verbally encouraged him or provided substantial assistance to how he operated the boat, that's a different story. Why should it turn on what he says? Because you also know the well-settled principle is a corollary that the complaint should be liberally construed is the principle that a complaint should not be dismissed unless there's no set of facts that could ever be proved to justify the complaint. And taking that in the inferences, how can we say that at this stage? They've alleged there was encouragement. They've alleged that she was exhorting him to speed. Okay, it's not been pinned down exactly what she said at the moment, but certainly the allegation and inferences are there that she encouraged him and exhorted him to go an excessive rate of speed in a dangerous place while intoxicated. Two thoughts on that, Your Honor. The first one is if you look at the facts as described in the other cases, Simmons is the best example, but certainly Sankey and Klassen also provide examples. Even at those points, Simmons, for example, they provided very specific facts for what the clump did to trigger a 76 liability. That's not been provided here. Because they have objective ways of determining that there were eyewitnesses. You don't have that here. But, Your Honor, that's contingent on the facts of the case. Ms. Melbourne shouldn't be penalized, and the plaintiff shouldn't be able to – plaintiff should not be able to circumvent Illinois' fact-pleading requirements simply because there were less witnesses. The other concern – Well, what we have, though, we have two defendants who have interest to preserve, and so if we say that at this stage of the proceedings there are no set of facts that can establish this, we are effectively limiting who can bring these litigations, and you would have to have independent observers to bring this type of litigation. That does not seem to be in the spirit of the statutory authority or the restatement. Your Honor, I think the other danger to the plaintiff's argument – It's simply saying verbally encouraged or provided substantial assistance. Assume those are simply conclusory. Those phrases can be tagged on to any complaint anywhere, anytime there's a passenger in the car. Passenger provided substantial assistance in telling the driver to go faster. Regardless of whether that's true or not, in the context of impaired driving, you're then starting to chisel away at the Supreme Court's holding in Charles, and you're starting to chip away at social host's liability. That's the danger to this, and that's the danger to the plaintiff's argument. Why does it have to be all or nothing? Well, let me ask you this. Perhaps this is a mundane question, but to have in-constant liability under H. 716, would alcohol or drugs have to be involved at all? No, not necessarily. I mean, if you're on a boat with somebody, and you're yelling at them, go faster, let's race with this boat, et cetera, et cetera, et cetera, wouldn't that establish in-constant liability even if nobody was going? Under those facts, I think that's the, if you will, the maritime equivalent of sanking. So we don't have to bring Charles even into the analysis, do we? No. I think the only – Charles has remained in the analysis insofar as the plaintiff does allege those facts. Right. The court can't consider those facts in reaching its determination. You're saying you have to be careful because it would chip away at the principle in Charles about, and I agree with you, that state of the law, you provide alcohol to somebody, they're going to have an accident, they're in a belt, they're on their own, they're not responsible. But I don't think you can use it as, instead of a shield, as a sword here. I'm saying, well, you know, you have to be careful because the alcohol, the host liability principles are going to be chipped away. I don't think it really is even necessary under the proper case. But moving on, counsel had made this indication both in briefs and in the trial court. We're not suggesting he has to plead exactly what the exact words Ms. Melbourne used. I think that's unrealistic. But he does have to allege, and the plaintiffs do have to allege, something that she said or did that caused Mr. Hattina to behave in a certain way. Well, she said words, the essence of which were, go faster. That's what they allege. She verbally encouraged him to go faster. I think what the complaint says is she encouraged him to drive recklessly. Your Honor, if you're looking at a negligence complaint and they said, I told her to drive negligently, that would be stricken 99 times out of 100. Have you read Justice Freeman's dissent in Simmons v. Homitas? I have. And that's one of the criticisms that Justice Freeman had with the majority, that the majority was reading too much into what was put in the complaint. That's the same criticism that you're leveling here, that we may be reading in, or if we were to reverse, we'd be reading in more to the complaint than is there. But, again, it's 2615 stage, liberal construction. So she said words that amounted to encouragement to go faster or, to borrow your phrase, what's currently in the complaint, drive recklessly. What difference does that make? I think the difference is they still have to plead. How do they know what she said unless they've deposed her or deposed Hattina? Well, that's exactly it. They can depose Hattina, and if they learn through discovery that they have a cause of action, then they can sue her. But under Your Honor's example, take it to the court. Was this case filed before the criminal case was resolved? If I recall correctly, the case certainly was filed before the criminal case was resolved, yes. So he would have had Fifth Amendment rights. He would have had Fifth Amendment rights. They wouldn't have been able to depose him. Well, they never got through the pleading stage. At this point, the criminal case, I believe, is on appeal. Well, he pled guilty, didn't he? Yes, I believe he did. I believe he did, and I believe he is. Yeah. Okay. So, in other words, now he wouldn't be available for deposition. I believe he would be. Well, are you encouraging that they bring two separate lawsuits? No. Because we try to do this in some orderly fashion. We get through these motions, and then we get to discovery. We don't depose this person first and, well, we'll have an order, but we don't depose this person in order to add people. We add the parties, and then we make legitimate, at least in their perspective, allegations, and then we go through the motion process. I agree you make legitimate allegations, Your Honor, but you also need some sort of a predicate, some sort of a factual predicate to work off of, and not just simply the conclusion that, oh, she must have done this. You have to have a reason to think that. With respect to two lawsuits, no, I don't think it would require two lawsuits. Very simply, they file a complaint against Mr. Khatina. He answers. They get written discovery. They can inquire about that in written discovery. They can take Mr. Khatina's death. Ask about what, if anything, Ms. Milwaukee said. What if he's unavailable, either legally or physically? Now what happens? Too bad? I mean, I suppose that's a problem that plaintiff's lawyers have to face. Well, there are time limits on all of these things. And I believe there's also a discovery rule with respect to should the plaintiffs discover two years down the road that now they have a cause of action they didn't know they previously had. But they've already looked at police reports, I assume. They've already talked to police officers. They've already talked to people at the scene. And so you would then be arguing, well, wait a minute, they had every knowledge of that because they did all of these things. So why now, just because he says X, Y, and Z, do they get to bring her in? I mean, if you're not going to argue that when it comes up, that's not a problem. No, I would say the easiest answer at this point, the only person that knows when Ms. Milwaukee sat on that boat is Mr. Khatina. Well, she knows, too. Sure. And they could have sued Mr. Khatina and issued a subpoena to Ms. Milwaukee. None of that justifies making her a defendant simply because they have a suspicion. And the fact that Judge Murphy gave them three opportunities to plead facts and spelled out very clearly that he believes those are conclusions, they had the opportunity, they had multiple opportunities to plead those facts, and they did not because they do not have facts. It's very, I mean, they are required to plead that in Illinois. And I think just the bold conclusion that she verbally encouraged or she provided substantial assistance, how did she provide substantial assistance? What did she do? It's a very simple question. It was answered in Simmons. What specifically did Onstage do? They spelled it out. And I would also note, I don't believe Simmons, Sankey, or Claussen actually was brought up on a 615 motion. And I think in that sense, this Court is faced with a unique matter in that sense. But in Sankey, the Court's description of the facts spelled out exactly what that defendant did. The allegations in the complaint allowed the Court to draw those conclusions. Right now, we're simply left with, at best, even given Your Honor's interpretation of the complaint, at best, you're left with maybe she said go faster. Is that substantial assistance? So in the absence of any further questions? Thank you. Thank you, counsel. Thank you. Briefly, Sankey was a 2615 state. And the defendant's motion was the second amended complaint failed to state a cause of action. The pleading in Sankey said the plaintiff alleged the defendant acted in concert, aided and abetted, civilly conspired, and willfully and wantonly participated in the wrongful conduct of the defendant, Richard Schwartz. Didn't it also say, or was that learned later, that encouraged him to go faster, to avoid a stop sign, to exceed the speed limit, to go faster? Yes. And those were specifics that were identified. But they weren't the pleadings. I believe that was it. But I'm saying the second we've said those pleadings are sufficient. As your Honor pointed out, the plaintiffs get all reasonable inferences from the well-plaid facts. To require us to say exactly what the litigants, the defendants, said at this stage of the game is simply too onerous. Your Honor mentioned Judge — Why didn't you go to see Mr. Hatena and get a deposition or some written interrogatories? Two things. He's appealing his sentence now, and he is asserting his Fifth Amendment privilege. So we are unable — there's no utility in going to see him. He won't talk to us. He won't give a statement under oath. He is now contending that his plea, he had poor representation or it wasn't adequately explained or whatever it is that he's — I don't know the exact particulars, but that's essentially what his contention is now. Have you sought to get use of immunity from the State's attorney? No. No. The — Judge Freeman's dissent specifically talked about he thought that the allegations saying — the plaintiff's allegation that said that the plaintiff was in a state of intoxication was insufficient. So we went exactly to our complaint, and Judge — Justice Freeman gave guidance to practitioners. And he said, you need to talk about facts that give rise to intoxication. And we've pleaded. Speech was slurred. Eyes were bloodshot. Behavior erratic. Exactly the verbatim from the arresting officer's description of Mr. Hatena. And the idea that verbally encouraged — so she said some words to him to drive in speed in excess of 40 miles an hour. I mean, I just — I don't understand what more we are required to do at this stage of a civil action. And you do have an allegation about drive recklessly, but then you specifically identified 40 miles an hour. That's exactly right. Paragraph 25. It's page A13 of the plaintiff's brief. All right. Thank you. Anything to add? Thank you very much, counsel. We appreciate argument. We will render a decision in due course. We now are adjourned for today. Thank you. Thank you.